**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

SANDRA MUNDY, an individual; on behalf of     :
herself and all other similarly situated,        :     **Case No.:** 7:11-CV-05979-**KMK**

                                     :

                           Plaintiff,     :

                                     :

        -against-              :

                                     :

DCM SERVICES, LLC, a Delaware Limited     :
Liability Company; and JOHN AND JANE       :
DOES NUMBER 1 THROUGH 25,           :

                                     :

                       Defendants.     :

-------------------------------------------------------------------X

## MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR SUMMARY JUDGMENT AND REIMBURSEMENT OF LEGAL FEES AND COSTS

**KENNETH A. ELAN, ESQ.**
**217 Broadway, Suite 603**
**New York, NY 10007**
**(212) 619-0261**

# TABLE OF CONTENTS

Page

**Preliminary Statement**.................................................................................................................1

**The Allegations of the Amended Complaint** ...............................................................................1

**Summary of the Argument** ...........................................................................................................3

**Point I**

The Standards on the Instant Motion .................................................................................................6

**Point II**

No Claim Is Stated For Violations of the TCPA ...............................................................................8

**Point III**

Mundy's Claims Under the FDCPA are Without Merit ...................................................................10

    A.       The Claim Under Section 1692b(3)............................................................................10

    B.       The Claims Under Sections 1692d and 1692d(5).........................................................11

    C.       The Claims Under Sections 1692e and 1692e(10) ......................................................15

**Point IV**

Mundy and Her Attorneys Should be Required to Pay DCM's Legal Fees and
Costs.................................................................................................................................................17

**Conclusion** ...................................................................................................................................19

## **TABLE OF AUTHORITIES**

*Cases*                                                                                           *Page*

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ……………………………..........…16

*Allen v. Checkredi of Kentucky*, LLC, 09-103 (E.D. Ky. 2010) ………………………...……..11

*Artega v. Asset Acceptance, LLC*, 733 F. Supp.2d 1218 (E.D. Cal. 2010) ………………..……14

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ……………………………...………………………..…10

*Bank of New York v. First Millennium, Inc.*, 607 F.3d 905 (2d Cir. 2010) ………….....………..6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ……………………………..……………....6,9

*Bentley v. Bank of America*, 773 F.Supp.2d 1367 (S.D. Fla. 2011) ……………...…………...…..9

*Blaxill v. Arrow Financial Services, LLC*, Case No. 5:10-CV-04520
(N.D. Cal. April 4, 2011) ……………………………………………………………………..10, 15

*Brown v. Hosto & Buchan, PLLC*, 748 F. Supp.2d 847(W.D. Tenn. 2010) ………………....…..8

*Carman v. CBE Group, Inc.*, 782 F. Supp.2d 1223 (D. Kan. 2011) ……………………………...13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ……………………………...………………………..7

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) …………………………….……..7

*Chavious v. CBE Group, Inc.*, 2012 U.S. Dist. LEXIS 4362
(E.D.N.Y. January 12, 2012) …………………………………………………………………....12, 13

*Chill v. General Electric Co.*, 101 F.3d 262 (2d Cir. 1996) …………………………...………....16

*Clingaman v. Certegy Payment Recovery Svcs.*, 2011 WL 2078629
(S.D. Tex. May 26, 2011) ……………………………………………………….…………….....13, 14

*Edeh v. Land Credit Mgm't, Inc.*, 748 F.Supp.2d 1030 (D. Minn. 2010) ………………………..8

*Emanuel v. Am. Credit Exch.*, 870 F.2d 805 (2d Cir. 1989) ……………………………...………....17

*Globecon Group, LLC v. Hartford Fire Ins.*, Co., 434 F.2d 165 (2d Cir. 2006) ………….………7

*Gorman v. Wolpoff & Abramson, LLP*, 370 F.Supp.2d 1005 (N.D. Cal. 2005) …………...12, 15

*Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926 (9th Cir. 2007) ……………………………...…17

*Hernandez v. Coffey*, 582 F.3d 303 (2d Cir.2009) ……………………………...………………7

*Hoover v. Midland Credit Mgmt. Inc.,* 10-CV-06856 (E.D. Pa. March 30, 2012) ……...5, 12, 14

*International Audiotext Network, Inc. v. American Tel. and Tel. Co.*,
62 F.3d 69 (2d Cir. 1995) …………………………………………………………………………..7

*Johnson v. Rowley,* 569 F.3d 40 (2d Cir. 2009) ………..……………………………..……..6

*Jones v. Rash Curtis & Assocs.*, 2011 WL 2050195 (N.D. Cal. Jan. 3, 2011) ……………13, 14

*Lerner v. Fleet Bank N.A.*, 459 F.3d 273 (2d Cir. 2006) …………...…………………….....…15

*Lozano v. Twentieth Century Fox Film Corp.*, 702 F.Supp.2d 999 (N.D. Ill. 2010)……………9

*Lynch v. Nelson Watson & Assocs., LLC,* 2011 WL 2472588
(D. Kan. June 21, 2011) ……………………………………………………………………....12, 13

*Martin v. Sands,* 62 F. Supp.2d 196 (D. Mass 1999) ……………………………...........……..15

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ………………...7

*Prewitt v. Wolpoff & Abramson, LLP,* 2007 WL 841778
(W.D.N.Y. March 19, 2007) …………………………………………………………………...14

*Pugliese v. Prof'l Recovery Serv.,* 2010 WL 2632562 (E.D. Mich. June 29, 2010) …………....8

*Puglisi v. Debt. Recovery Solutions,* LLC, 2011 WL 459334 (E.D.N.Y. 2011) ………………..8

*R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69 (2d Cir. 1984) …………….…………...8

*Saltzman v. I.C. System, Inc.*, 2009 WL 3190359 (E.D. Mich. 2009) …………….…………..15

*Sierra v. Foster & Garbus*, 48 F. Supp.2d 393 (S.D.N.Y. 1999) …………………………...........18

*Sullivan v. Credit Control Svcs. Inc.*, 745 F. Supp.2d 2 (D. Mass. 2010) ……..………………15

*Tucker v. CBE Group, Inc.*, 710 F. Supp.2d 1301 (M.D. Fla. 2010) …………..………………13

*Vanhorn v. Genpact Svcs., LLC,* 2011 WL 4565477 (W.D. Mo. February 14, 2011) ……..……14

*Versteeg v. Bennett,* 775 F.Supp.2d 1316 (D. Wyo. 2011)………………………..………...……..9

## Statutes and Rules

Page

Fair Debt. Collection Practices Act, 15 U.S.C. §1692 *et seq*……………………..………………1

§1692(b)(3)……………………………………………………………...…………..2, 3, 5, 10, 11

§1692d…………………………………………………………………………… 2, 5, 11, 12, 14

§1692d(5)…………...…………………………………………………………...………..2, 5, 11, 14

§1692e…………………………………………………………………2, 5, 15, 16, 17, 18

§1692e(10)…………...…………………………………………………...……………2, 5, 16, 17

§1692k(a)(3)………………………………………………………...……………………1, 17, 19

Telephone Customer Protection Act, 47 U.S.C. §227 *et seq* ……………………………………… 1

§227(b)(1)(A)............................................................................................................................... 8

§227(b)(1)(A)(iii)...................................................................................................................... 2, 3, 8

Fed. R. Civ. P. 9(b)…………………………………………………………………..……15

Fed. R. Civ. P. 12(b)(6)……………………………………………………………….....................6

Fed. R. Civ. P. 12(c)…….……………………………………………………………………19

Fed. R. Civ. P. 56………………………………………………………………..…..7, 19

Fed. R. Civ. P. 56(a)…………………………………………………………………..…7

New York EPTL 1-2.6 …………………………………………………………………………….2

S.Rep. No. 102-178 at 5 reprinted in 1991 U.S.C.C.A.N. 1968, 1972-73 (1991) ……….……..8, 9

## PRELIMINARY STATEMENT

Defendant DCM Services, LLC ("DCM"), submits this memorandum in support of its motion for judgment on the pleadings and/or for summary judgment and for sanctions including reimbursement of all legal fees incurred by DCM pursuant to Fed. Civ. P. 12(c) and 56 and section 1692k(a)(3) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq*. DCM is a debt collector within the meaning of the FDCPA. Mundy is identified in the Amended Complaint ("AC") as the daughter of the late Carolyn Scarantino and a "person" within the meaning of the statute. AC, ¶¶ 21, 36. Plaintiff filed her original Complaint on August 25, 2011 alleging violations of the FDCPA. DCM filed an Answer denying the material allegations and asserting affirmative defenses. Following a pre-motion conference in May 2012, Mundy was granted leave to file the Amended Complaint. A copy is annexed to the accompanying Affirmation of Kenneth A. Elan, Esq. ("Elan Affirmation") as Exhibit A. The only new allegations pertain to telephone calls made by DCM to her cellular telephone and a cause of action  that DCM violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. DCM filed an Answer to the Amended Complaint (again) denying the material allegations and asserting affirmative defenses, a copy of which is annexed to the Elan Affirmation as Exhibit B.

## THE ALLEGATIONS OF THE AMENDED COMPLAINT

The Amended Complaint alleges that prior to her death, Carolyn Scarantino incurred a debt to Kohl's Department Stores. The debt was placed with DCM for collection. DCM "knew" Ms. Scarantino died leaving no estate or personal representative. AC, ¶¶ 25, 29, 34. DCM contacted Mundy on "multiple occasions" via telephone and left voice messages on her home and cellular telephone in an attempt to collect the debt incurred by her late mother. AC, ¶ 39. The pleading alleges "upon information of belief" that DCM contacted her on her cellular telephone by using an automatic telephone dialer system using an artificial or prerecorded voice. AC, ¶¶ 41, 42. Mundy alleges that she never gave DCM consent to call her on her cellular

1

telephone using an automatic telephone dialing system or a prerecorded message. AC, ¶ 45. On the basis of these allegations, she alleges that DCM violated section 227(b)(1)(A)(iii) of the TCPA. She further alleges that the multiple phone calls constituted violations of sections 1692(b)(3) and 1692d of the FDCPA.

The balance of the Amended Complaint is a rehash of the allegations in the original one. Mundy alleges that DCM sent a letter "purportedly" to the personal representative of the Scarantino Estate, a copy of which is next to her pleading. She alleges that the letter requested payment of a debt of $577.46 owed by Ms. Scarantino but "is intentionally ambiguous as to whom, if anyone, is obligated to pay." AC, ¶ 56. According to Mundy, the intent of the letter was to provoke action by some person in the family of the decedent. AC, ¶ 59. She admits that the letter goes on to state that, "if you are not the personal representative please contact us with the name and address of the personal representative or Estate Attorney...." AC, ¶ 60. Mundy then alleges that since a claim against an estate is handled in court, the letter was intended to induce a person related to the decedent to pay the debt even if that person had no legal or moral obligation to pay it. AC, ¶ 62.[1]

Continuing, the pleading alleges that Mundy faxed a letter to DCM stating that she had read the "Notice of Claim" and "indicated" that the debt was not valid and requested verification of the debt. AC, ¶ 63. A copy of Mundy's letter to DCM is annexed to the Amended Complaint. Responding, DCM sent her a letter which provided an abstract of the Kohl's account. A copy of DCM's letter in reply and abstract of the Kohl's debt are also annexed to the Amended Complaint. Plaintiff alleges that she received and opened the letter. AC, ¶ 64. Separate and apart from the foregoing allegations, Mundy alleges that DCM caused her telephone to ring continuously. AC, ¶ 67. On the basis of these allegations, DCM is alleged to have violated sections 1692d(5), 1692e and 1692e(10) of the FDCPA.

---

[1] "Estate" is defined as (a) the interest which a person has in property; and (b) the aggregate of property which a person owns. New York EPTL 1-2.6.

2

## SUMMARY OF THE ARGUMENT

Mundy's TCPA claim under 47 U.S.C. 227(b)(1)(A)(iii), prohibiting a debt collector from using an automatic telephone dialer to call a cellular telephone for non-emergency reasons or absent the express consent of the cellular telephone owner is without merit since DCM did not utilize an automatic dialing device or prerecorded voice message. The Court is referred to the accompanying Affidavit of Nathan Jiwani, a "team leader" employed by DCM for more than four years. He avers that he personally called Mundy's cellular telephone on three separate occasions on three separate days and left a message in her voice mail on each occasion. Indeed, Mundy herself admits that her allegations pertaining to the use of an automatic dialer and pre-recorded message by DCM are *not* made on her personal knowledge. Rather, she alleges that she is "informed and believes, and on that basis alleges… DCM used a prerecorded voice." AC, ¶ 42. *A fortiori,* no claim is stated as a matter of fact and law.

Mundy's FDCPA claims are without merit. We start by noting the factual misstatements in the Amended Complaint. To begin with, Mundy does not set forth the basis for her belief that DCM "knew" that Ms. Scarantino died leaving no estate or personal representative. Indeed, if DCM knew the foregoing to be true, there would have been no reason to send its initial letter requesting information as to the identity of the personal representative of the estate. The allegation is simply a falsehood.[2] Concerning the initial DCM letter, Mundy alleges that it "purports to be addressed to the personal representative of the Estate of Carolyn Scarantino, but acknowledges that she is deceased." AC, ¶ 55. In fact, the letter *is* addressed to the personal representative of the Scarantino Estate *and* acknowledges that she is deceased. Furthermore, the allegations that, "whether an estate exists in New York is a matter of public record" and that estates are "handled in court," are blatantly untrue. Any attorney knows or should know this.

---

[2] In a separate accompanying Affidavit, DCM's Senior Vice-President of Operations, Tracy Bannochie, avers that prior mailing its initial letter addressed to the representative of the Scarantino Estate, DCM conducted a search of over 3,500 Surrogate's Court records (including the Surrogate's Courts of the State of New York) and found no evidence that an estate proceeding had been commenced by anyone on behalf of the Scarantino Estate.

An estate is only a matter of public record if, and when, a petition for Letters Testamentary or Administration is filed with a Surrogate's Court. However, it is axiomatic that people often die leaving few, if any, material assets. Under those circumstances, a Surrogate's Court proceeding is unnecessary. Moreover, people often die leaving material assets but due to the nature of the assets a probate or administration is (again) unnecessary. The latter occurs when a person dies leaving assets in a trust, in joint names with a right of survivorship or, the assets comprising the estate are not subject to probate or administration, i.e., they are assets passing outside the decedent's Will (e.g., insurance, IRAs, proceeds from 401Ks and other pensions). Regardless, the assets comprising the estate pass by operation of law to the trust beneficiary (in the case of a trust), survivor (in the case of jointly-held assets), or the named beneficiary (in the case of insurance, death benefits, retirement proceeds and the like).

Thus, with respect to the Scarantino Estate, a creditor or in this case, a debt collector, has no way of knowing whether the decedent died leaving an estate with assets sufficient to pay his/her outstanding debts. This is particularly the case where, as here, no Surrogate's Court proceeding had been commenced at the time DCM sent its initial letter. Moreover, the Amended Complaint does not allege that a Surrogate's Court proceeding was ever commenced. Hence, a letter addressed to the personal representative of the estate was not only appropriate, but the only thing DCM could reasonably do under the circumstances in an attempt to lawfully collect the debt. Indeed, one might ask, "what else was DCM supposed to do?"

Mundy's claim under section 1692b(3) is meritless. This section prohibits a debt collector from communicating with any person *for the purpose of acquiring location information about the consumer* more than once unless the debt collector reasonably believes that the earlier response by such person is erroneous or incomplete. However, in this case, DCM did not attempt to communicate with Mundy concerning location information. Rather, as the Jiwani and Bannochie Affidavits make clear, based on the lack of any Surrogate's Court proceeding related to the Scarantino Estate; a telephone conversation between Mr. Jiwani and Mundy's brother, Robert Scarantino, where he confirmed that his sister was handling the financial affairs of their

4

late-mother; and Mundy's own acts in writing a letter to DCM denying that her late-mother owed money to Kohl's and requesting verification of the debt, DCM reasonably believed that she was the *de facto* representative of the Scarantino Estate.[3] Notwithstanding the fact that the statute is inapplicable to the conduct complaint of, as shown *infra*, a debt collector's acts under section 1692b(3) are subject to a "reasonable belief" standard. DCM clearly satisfies this standard.

Mundy's claims under Section 1692d and 1692d(5) fail for different reasons. First, she does not allege the dates and times when DCM allegedly called let alone the number of times DCM telephoned her. Her failure to do nothing more than track the language of the statute with respect to a claim of excessive telephone calls is deficient as a matter of law. *See, e.g., Hoover v. Midland Credit Mgmt. Inc.,* 10-CV-06856 (E.D. Pa. March 30, 2012)(Bare, conclusory allegations alleging "harassing" or "deceptive" conduct do not state a cause of action under section 1692d).[4] Second, she implicitly admits that she *never* wrote a letter or otherwise communicated to DCM that it should "cease and desist" from contacting her by telephone or in any other manner. Under these circumstances, well settled case law holds that the calls show nothing more than an intent to contact a debtor rather than an intent to annoy, abuse or harass. Third, the Bannochie Affidavit avers that DCM attempted to call Mundy a total of just eight times over the course of almost two months. As a matter of law, this does not constitute excessive calls or harassment under the statute.

Mundy's claims for violations of Section 1692e and 1692e(10) are without merit too. Section 1692e states in relevant part that, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Presumably, the basis for this claim are the (blatantly false) allegations that DCM "knew the decedent died without leaving an estate or personal representative" and "since claims against estates are handled in court, DCM's letter could have only been intended to induce a third party, such as

---

[3] *See,* Bannochie Aff., ¶ 9.

[4] A copy of the decision in *Hoover* is annexed to the Elan Affirmation as Exhibit C.

5

Mundy, to pay her mother's debt." AC, ¶¶ 57, 62.

Putting aside the false pretext for these claims, Mundy also asserts that DCM's initial letter addressed to the "representative of the Estate of Carolyn Scarantino" was, by itself, misleading. We invite the Court's review of the letter. As is often said, "the document speaks for itself." It clearly states that DCM is seeking to collect a debt on behalf of its customer, Kohl's, for a debt incurred by the decedent. The letter further states that it was sent solely "in your capacity as personal representative of the Estate of Carolyn T. Scarantino." Continuing, the letter states that if the recipient of the letter is not the personal representative of the estate, the recipient is requested to contact DCM with the name and address of the personal representative or the attorney for the estate who is handling the affairs of the decedent.

Mundy's actions speak louder than words. She was not misled. After receipt of the letter, she wrote her own letter to DCM disputing the debt and requesting verification. DCM responded by sending the requested verification. Other than the general allegation that the initial DCM letter was "misleading" (and which is belied by plaintiff's own acts in response to the letter), nothing is stated that in any manner demonstrates that anyone other than the decedent or her estate was responsible for the payment of the debt.

## POINT I

## THE STANDARDS ON THE INSTANT MOTION

A Rule 12(c) motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010); *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009). Accordingly, a plaintiff must plead sufficient facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The Court must limit itself to the facts alleged in the complaint which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters to which judicial notice may be taken; or

to documents upon the terms and effect of which the Complaint "relies heavily" and which are thus rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), *citing, International Audiotext Network, Inc. v. American Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). Furthermore, the presentation of any other extrinsic material on a motion for judgment on the pleadings which is not excluded from consideration by the court, requires the court to convert the motion into one seeking summary judgment pursuant to Rule 56. *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir.2009).

Since DCM is relying in part of the Jiwani and Bannochie Affidavits, summary judgment is appropriate to the extent that Mundy's claims are not dismissible as a matter of law pursuant to Rule 12(c). It is well settled that summary judgment will be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(a). DCM recognizes that a court may not grant a motion for summary judgment unless "the pleadings... affidavits... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Globecon Group, LLC v. Hartford Fire Ins., Co.*, 434 F.2d 165, 170 (2d Cir. 2006). As the movant, DCM has the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, it is also well settled that once the party seeking summary judgment meets its initial burden, the non-moving party must come forward with specific facts establishing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Therefore, the non-movant may not rest upon conclusory allegations or denials, but instead must set forth "concrete particulars" showing that a trial is necessary. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984), cited in, *Puglisi v. Debt. Recovery Solutions, LLC*, 2011 WL 459334 at *4 (E.D.N.Y. 2011).

At bar, the pertinent facts are not in dispute. Questions of law only are before the Court with respect to whether (i) calls made by persons and not automatic dialers to cellular telephones do not violate the TCPA and (ii) general allegations tracking the language of the statute and/or falsehoods masked as "allegations of fact" can state a claim under the FDCPA.

## POINT II

## NO CLAIM IS STATED FOR VIOLATIONS OF THE TCPA

Generally speaking, the TCPA forbids any person (including a debt collector) from using an automated dialing system to call any telephone number assigned to a cellular telephone service unless the call is made for an emergency purpose or with the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A); *Edeh v. Land Credit Mgm't, Inc.*, 748 F.Supp.2d 1030 (D. Minn. 2010). Mundy's Second and Third Causes of Action, alleging violations of 47 U.S.C. 227(b)(1)(A)(iii), makes it unlawful to call "using any automatic telephone dialing system or an artificial or prerecorded voice" to a telephone number assigned to a cellular telephone service. There are three elements to a cause of action under 47 U.S.C. 227(b)(1)(A)(iii): "(1) a call was placed to a cell or wireless telephone, (2) by the use of any automatic dialing system and/or leaving an artificial or prerecorded message, and (3) without prior consent of the recipient." *Brown v. Hosto & Buchan, PLLC,* 748 F. Supp.2d 847, 859 (W.D. Tenn. 2010), *citing, Pugliese v. Prof'l Recovery Serv.,* 2010 WL 2632562, at * 7 (E.D. Mich. June 29, 2010).

At bar, Mundy's TCPA claims fail since she cannot satisfy the second element of the cause of action, i.e., the calls were placed by the use of any automatic dialing system and/or leaving an artificial or prerecorded message. The accompanying Jiwani Affidavit reveals that a total of only three calls were made to Mundy's cell phone on August 15, 19 and 23, 2011. Each call was *manually dialed* by Mr. Jiwani. He *personally* left a message after each call was made. No automatic dialing device or artificial or prerecorded message was utilized. Jiwani Aff. ¶¶ 4, 8. *A fortiori,* no claim under the TCPA is stated. *See, Lozano v. Twentieth Century Fox Film Corp.*, 702 F.Supp.2d 999, 1008 (N.D. Ill. 2010), *citing,* S.Rep. No. 102-178 at 5 reprinted in

1991 U.S.C.C.A.N. 1968, 1972-73 (1991)("The Committee believes that Federal legislation is necessary to protect the public from automated telephone calls. These calls can be an invasion of privacy, an impediment to interstate commerce, and a disruption to essential public safety services.").

Regardless, the TCPA claims are deficient as a matter of law. Mundy merely alleges that, "[o]n multiple occasions, over numerous weeks… DCM SERVICES contacted MUNDY on her cellular telephone via an automatic telephone dialing system…." AC, ¶41. She does not allege basic information such as the date(s) the calls were made; the number of calls made; the times of the day the calls were made; the cellular telephone number allegedly called by DCM; or, the basis for her belief that the calls were made by an automatic dialer.[5] The failure to allege this essential information is fatal to her TCPA claim. *See, Bentley v. Bank of America,* 773 F.Supp.2d 1367, 1374 (S.D. Fla. 2011), where the court held that the plaintiff's allegation that the defendants used an automatic dialer to "place numerous telephone calls to the plaintiff's cellular telephone" failed to give the defendant adequate notice of the precise nature of the violation claimed. *See also, Twombly,* 550 U.S. at 555, where the Supreme Court held that under federal notice pleadings standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." Here, the Amended Complaint lacks sufficient facts to state a claim under the TCPA. *cf., Versteeg v. Bennett,* 775 F.Supp.2d 1316, 1319 (D. Wyo. 2011)(on motion for partial summary judgment the plaintiff submitted an affidavit that included the text of a voicemail message received from the defendant's automatic dialer).

---

[5] In Paragraph 42 of the Amended Complaint, Mundy merely alleges that she is "informed and believes" that the calls placed by DCM were made by an "artificial or prerecorded voice."

9

## POINT III

## MUNDY'S CLAIMS UNDER THE FDCPA ARE WITHOUT MERIT

### A.    The Claim Under Section 1692b(3)

Mundy alleges in her First Cause of Action that DCM violated section 1692b(3) by communicating with her more than once without her request or authorization. AC, ¶ 96(a). She merely alleges that DCM attempted to contact her on "multiple occasions" by leaving messages on her home and cellular telephones. AC, ¶¶ 39, 41. At the outset, we note that this claim suffers the same infirmity as her claim under the TCPA. She fails to set forth the number of telephone calls that were made to her cellular and residential telephones; the dates of the calls; the times of the calls; and the message, if any, that was left by the DCM representative. For this reason alone, the claim is deficient. *Blaxill v. Arrow Financial Services, LLC*, Case No. 5:10-CV-04520 (N.D. Cal. April 4, 2011)(Complaint failed to state a claim for relief under, *inter alia*, section 1692b(3) for its failure to allege dates and contents of alleged communications from the defendant debt collector);[6] *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

Regardless, the claim fails for an entirely different reason. Section 1692b(3) provides:

> Any debt collector communicating with any person other than the consumer for the purpose of acquiring *location information* about the consumer shall not communicate with any such person more than once... unless the debt collector reasonably believes that the earlier response by such person is erroneous or incomplete and that such person now has correct or complete   location information. (Emphasis supplied).

DCM did not contact Mundy on multiple occasions for the purpose of acquiring location information about her late-mother's estate. Rather, it contacted her for the purpose of discussing the matter of the debt incurred by her late-mother to Kohl's. Thus, the statute is inapplicable. That aside, the standard governing a debt collector's conduct under section 1692b(3) is one of

---

[6] A copy of the decision in *Blaxill* is annexed to the Elan Affirmation as Exhibit D.

"reasonable belief." *Allen v. Checkredi of Kentucky, LLC*, 09-103 (E.D. Ky. 2010)(no claim stated under section 1692b(3) since the defendant debt collector reasonably believed that the third parties initially provided incomplete location information and that the third parties later had complete information).[7]

Here, DCM reasonably believed that Mundy was the *de facto* personal representative of her late-mother's estate based on the fact that no estate proceeding was commenced appointing an executor or administrator; a telephone conversation between her brother, Robert Scarantino, and DCM's representative, Mr. Jiwani, where he informed Mr. Jiwani that his sister was handling the affairs pertaining to their late-mother's estate; and, Mundy's own conduct disputing the Kohl's debt in writing and requesting verification of same. Moreover, DCM was never advised by Mundy or her brother of the name of an attorney or other person handling the affairs of their late-mother; and, Mundy never returned any of DCM's telephone calls or wrote a letter informing DCM that she was not the personal representative of the estate. Thus, DCM had ample grounds to believe that she was the person handling the affairs of the estate and was justified in attempting to reach her to discuss payment of the debt to Kohl's.

**B.    The Claims Under Sections 1692d and 1692d(5)**

Mundy alleges that DCM violated sections 1692d and 1692d(5) by causing her telephone to ring continuously with the intent to annoy, abuse or harass her. AC, ¶¶ 96(b), (c). We noted that the Amended Complaint does not allege that Mundy ever spoke with a representative of DCM and informed him/her to cease and desist from calling. Similarly, the Amended Complaint does not allege that Mundy ever directed DCM in writing to "cease and desist" from calling. Furthermore, the Amended Complaint does not set forth basic information such as the number of

---

[7] A copy of the decision in *Checkredi* is annexed to the Elan Affirmation as Exhibit E.

times DCM called Mundy; the dates of such calls; the times of such calls; and, the messages, if any, that were left for her by DCM personnel. It is well settled that a plaintiff seeking to state a claim under the FDCPA for harassing telephone calls is required to allege more than conclusory allegations. A plaintiff is required to include information such as the dates and times of the telephone calls. *Gorman v. Wolpoff & Abramson, LLP*, 370 F.Supp.2d 1005, 1013 (N.D. Cal. 2005); *Hoover, supra*. Thus, the claim is deficient as a matter of law.

Regardless, Judge Seybert's recent decision in *Chavious v. CBE Group, Inc.*, 2012 U.S. Dist. LEXIS 4362 (E.D.N.Y. January 12, 2012), is persuasive authority as to the lack of merit of any claim under section 1692d or 1692d(5). In *Chavious*, the defendant was a debt collector that, in attempting to collect a debt, repeatedly called a cellular telephone number that it erroneously believed belonged to an unnamed debtor. The telephone number was actually that of the plaintiff who was not related to the debtor. The defendant called the plaintiff 36 times between January 20 and March 19, 2010. No one answered the calls.

Based on these facts, the plaintiff alleged that the defendant violated section 1692(d) since the defendant "caused a telephone to ring… repeatedly or continuously with intent to annoy, abuse or harass… and placed telephone calls without meaningful disclosure of the caller's identity." *Id.* at *4. Judge Seybert held, that as a matter of law, the defendant's telephone calls to the plaintiff's cellular telephone did not rise to the level of a FDCPA violation. Citing, *Lynch v. Nelson Watson & Assocs., LLC*, 2011 WL 2472588, at *2 (D. Kan. June 21, 2011), the court held that in evaluating whether repeated telephone calls were made "with intent to annoy, abuse or harass" courts generally consider the volume and pattern of calls. The court observed that a caller's intent is often a jury question. However, Judge Seybert held that the plaintiff failed to establish a triable issue of fact. She noted that courts have awarded defendants summary

12

judgment where the volume and pattern of calls demonstrated an intent to contact debtors rather than an intent to annoy, abuse or harass them (citing, *Carman v. CBE Group, Inc.*, 782 F. Supp.2d 1223, 1232 (D. Kan. 2011)). The court determined that the facts showed an intent by the defendant to establish contact with the plaintiff rather than intent to harass (citing, *Tucker v. CBE Group, Inc.*, 710 F. Supp.2d 1301, 1305 (M.D. Fla. 2010)).

The court noted that in *Carman* and *Tucker*, as in the case before her, the debt collector was unable to reach anyone on the other end of the telephone and the call recipient did not ask the defendant to refrain from calling. *That is precisely what occurred in this case*. Furthermore, Judge Seybert held that the volume and pattern of calls in *Chavious* – 36 calls over nine weeks and all made at reasonable times and not one immediately following the other – was consistent with cases in which other courts had granted defendants summary judgment. *See, e.g., Lynch,* 2011 WL 2472588, at *2 (56 telephone calls over approximately 3 months, without more, was not a FDCPA violation); *Carman,* 782 F. Supp. 2d at 1227 (149 telephone calls over 2 months, without more, was not a violation); *Clingaman v. Certegy Payment Recovery Svcs.,* 2011 WL 2078629, at *4 (S.D. Tex. May 26, 2011) (55 calls between March 4 and June 18 was not a violation where plaintiff never asked defendant to stop calling); *Jones v. Rash Curtis & Assocs.,* 2011 WL 2050195, at *2-3 (N.D. Cal. Jan. 3, 2011) (179 calls were not a violation where, among other things, plaintiff did not ask defendant to stop calling). Here, DCM attempted to contact Mundy by telephone on only eight occasions during reasonable hours over a period of approximately 2 months.[8] As a matter of law, this does not constitute excessive calls or harassment.

---

[8] Bannochie Aff., ¶ 13.

It is also noteworthy that Judge Seybert agreed with the defendant that whether it was able to reach the plaintiff and when the plaintiff asked the defendant to stop calling was relevant to whether the defendant *intended* to annoy, abuse or harass (the basis for a claim under section 1692(d)(5)). The court reasoned that simple logic recognizes that an inference of intent to annoy, abuse, etc. is "much more readily drawn against a defendant who repeatedly calls someone after being asked to stop." 2012 U.S. Dist LEXIS 4362, at *8. Again, the court relied on a well-developed body of case law that reflected this rationale. *See, e.g., Clingaman,* 2011 WL 2078629, at *4; *Jones*, 2011 WL 2050195, at *3 (awarding defendants summary judgment where "[t]here is no genuine issue of fact that Plaintiff asked the collectors to stop calling, or asked them to refrain from calling or specifically at work or complained about the number of calls received"); *Mammen v. Bronson & Migliaccio, LLP,* 715 F. Supp.2d 1210 (M.D. Fla. 2009)(no violation of section 1692d(5) where there was no evidence that calls were made continuously or at a time of day a reasonable jury could find to be harassment); *Hoover, supra* (No allegation that the plaintiff asked the defendant to stop contacting her fatal to section 1692d claim); *cf., Prewitt v. Wolpoff & Abramson, LLP,* 2007 WL 841778, at *3 (W.D.N.Y. March 19, 2007) (denying the defendant summary judgment where it continued to call the plaintiff after the plaintiff said he could not pay the debt due to financial constraints). At bar, it is undisputed that at no time did Mundy ever contact DCM, orally or in writing, and demand that it "cease and desist" from calling her. Therefore, Mundy cannot show, as a matter of law, an intent to harass or annoy by DCM.

Even assuming *arguendo* that DCM called Mundy on a daily basis – something which did not occur – that by itself would not constitute evidence of egregious conduct or an intent to harass. *Vanhorn v. Genpact Svcs., LLC*, 2011 WL 4565477 at * 4 (W.D. Mo. February 14,

14

2011); *Accord, Artega v. Asset Acceptance, LLC*, 733 F. Supp.2d 1218 (E.D. Cal. 2010)(no triable issue of fact whether a debt collector violated section 1692d and 1692d(5) absent evidence beyond daily or near daily telephone calls to a debtor); *Saltzman v. I.C. System, Inc.*, 2009 WL 3190359 at * 7 (E.D. Mich. 2009). DCM's actions show nothing more an intent to contact Mundy.

## C.   The Claims Under Sections 1692e and 1692e(10)

These sections forbid a debt collector from using any false, deceptive or misleading representation or means in order to collect a debt or to obtain information concerning a consumer. We start by noting that the Amended Complaint (again) fails to allege the false representations or deceptive means utilized by DCM. We refer the Court to the Amended Complaint which contains a dearth of allegations sufficient for DCM to determine the conduct complained of. AC, ¶ 96(d). As we have noted, merely tracking the allegations of a statute, without more, fails to state a claim for relief. *Blaxill, supra,* at P. 6, *citing, Gorman*, 370 F. Supp.2d at 1014 ("The instant Complaint fails to state a claim for relief ... because it contains nothing more than threadbare recitals of the elements of a cause of action.") (internal quotation marks omitted)..

A violation of section 1692(e) may occur when a collection document contains objectively false statements. *Sullivan v. Credit Control Svcs. Inc.*, 745 F. Supp.2d 2, 11(D. Mass. 2010), *citing, Martin v. Sands*, 62 F. Supp.2d 196, 201 (D. Mass 1999). We (again) note that Mundy's First Cause of Action does not allege which statements in the initial DCM letter were false. A review of the fact allegations of the Amended Complaint reveals that Mundy alleges that DCM "knew there was no estate" when it sent its initial letter. AC, ¶ 57. However, Mundy does not allege the basis for her belief. It is well settled that Rule 9 of the Federal Rules require a

complaint to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Lerner v. Fleet Bank N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006). To satisfy this heightened pleading standard, a complaint must, among other things, "allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). At the very least, a plaintiff must allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Chill v. General Electric Co.*, 101 F.3d 262 (2d Cir. 1996). Here, there are no *facts* alleged whatsoever.

Mundy then alleges that the letter was intended to provoke action by some natural person in the family of the decedent. AC, ¶ 59. What action is not set forth in the pleading. Regardless, "provoking action" by someone is not, in and of itself, evidence of wrongful intent. After reciting the text of the letter, Mundy [falsely] alleges that, "since a claim against an estate is handled in court, this statement [the payment options set forth in the letter], can only be intended to induce a person related to the decedent to call and arrange to pay the debt even if that person has no legal or moral obligation to pay it." AC, ¶¶ 60, 61, 62. However, Mundy's allegations that the letter was intended to induce a third party to pay the debt is belied by the fact that the letter was addressed to the "personal representative of the Scarantino Estate" and the text of the letter clearly states that it was sent "solely in your capacity as personal representative of the Estate of Carolyn T. Scarantino." Indeed, the paragraph continues, "if you are not the personal representative, please contact us with the name and address of the personal representative or Estate Attorney who is handling the affairs of the deceased." Nowhere in the text of the letter does it state that the recipient is obligated – legally, morally or otherwise – to pay the debt incurred by the decedent. We remind the Court that the pretext for Mundy's allegation that the letter was intended to persuade a third party to pay the debt is her blatantly false allegation that

"since a claim against an Estate is handled in court, this statement can only be intended to induce a person related to the decedent to... pay it." AC, ¶ 62.

We noted above that estates are frequently handled out of court due to a lack of assets (as was apparently the case with the Scarantino Estate) or because the assets comprising the estate do not require a probate or administration. Since the false allegations concerning estates being administrated exclusively in the Surrogate's Courts are the *sole basis* for the claims under sections 1692e and 1692e(10), the claims are meritless.

### POINT IV

### MUNDY AND HER ATTORNEYS SHOULD BE REQUIRED TO PAY DCM'S LEGAL FEES AND COSTS

It is self-evident that Mundy and her attorneys filed this Action with knowledge of or in reckless disregard of the falsity of the critical fact allegations in the Amended Complaint. Accordingly, they and their client should be required to reimburse DCM for its costs incurred in defending this Action including the payment of its legal fees. The FDCPA provides in relevant part that, "On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. 1692k(a)(3); *Emanuel v. Am. Credit Exch.,* 870 F.2d 805 (2d Cir. 1989); *Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926 (9th Cir. 2007).

At bar, Mundy has brought claims against DCM sounding in fraud under section 1692e and 1692e(10). As noted, the basis for these claims is the *factual* assertion by Mundy that DCM *knew* Ms. Scarantino died without leaving an estate or personal representative "since claims against estates are handled in court." AC, ¶¶ 57, 62. We have already demonstrated that this is palpably false. We further noted that an attorney duly admitted to practice law in the State of

New York either knows, should know or could easily determine with just minimal research that claims against estates are not necessarily handled in a Surrogate's Court.

What makes these false claims particularly egregious is that Mundy and her attorneys were on notice of their falsity as early as October 2011 when Mr. Elan, attorney for DCM, wrote to the Court requesting a pre-motion conference.[9] In his letter, and at the conference in May 2012, Mr. Elan informed the Court (and opposing counsel) of the factual errors in the section 1692e claims. Rather than withdraw the claims, counsel persisted by including them in the Amended Complaint. There can be little doubt that an attorney who knowingly files a claim lacking basis in fact and/or law shows an utter disregard for his duties tantamount to bad faith.[10] In *Sierra v. Foster & Garbus,* 48 F. Supp.2d 393 (S.D.N.Y. 1999), Judge Owen did not hesitate to require a plaintiff and his attorneys, jointly and severally, to reimburse the defendant for its legal fees incurred in defending an action where, as here, the plaintiff merely made conclusory allegations and failed to show any instance of false, deceptive or misleading representations. The court held that under the circumstances present in that action, it had been filed in bad faith. *Sierra* compels a similar determination that DCM is entitled to recoup its legal fees and costs, jointly and severally, from Mundy and her attorneys.

---

[9] A copy of the Elan letter is annexed to his Affirmation as Exhibit E.

[10] While DCM has noted the factual misstatements in the 1692e claims it does not concede that Mundy's other claims under the FDCPA or TCPA were filed in good faith or for a proper purpose. Rather, the Affidavits submitted on the instant motion show the contrary to be true.

## CONCLUSION

For all the foregoing reasons, the motion by DCM for judgment on the pleadings and/or for summary judgment and for reimbursement of its legal fees and costs pursuant to Fed. R. Civ. P 12(c) and 56 and section 1692k(a)(3) of the FDCPA should be granted in all respects.

KENNETH A. ELAN  (KE-1729)
Attorney for Defendant DCM
217 Broadway, Suite 606
New York, NY 10007
T (212) 619-0261/F (212) 385-2707

19